## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

ALAN RODEMAKER,

      Plaintiff,

v.

CITY OF VALDOSTA BOARD OF
EDUCATION, or, in the Alternative,
VALDOSTA CITY SCHOOL
DISTRICT, WARREN LEE, LIZ
SHUMPHARD, TYRA HOWARD,
DEBRA BELL, and KELISA BROWN,
individually as Agents of the City of
Valdosta Board of Education and/or the
Valdosta City School District,

      Defendants.

Civil Action No. _____

**JURY TRIAL DEMANDED**

## COMPLAINT

**COMES NOW**, Plaintiff, Alan Rodemaker, by and through his attorneys,

alleges and states as follows:

## PARTIES, JURISDICTION, AND VENUE

1.  Plaintiff Alan Rodemaker brings this instant action for violations of Title

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (hereinafter Title

VII).

2.  Plaintiff Alan Rodemaker is a citizen of Georgia.  He is a former employee of Defendants the City of Valdosta Board of Education and/or the City of Vidalia School District, as defined by Title VII.

3.  Defendant City of Valdosta Board of Education (hereinafter "Board of Education") is the governing board for Defendant City of Valdosta School District (hereinafter "School District.")  Defendant Board of Education operates in Lowndes County, Georgia.  The City School Superintendent makes employment recommendations to the Board of Education.  It is the responsibility and duty of the Board of Education to evaluate and act upon these employment recommendations. The City of Valdosta Board of Education, and/or the School District, are "employers" as defined by Title VII.

4.  Upon information and belief, Defendant Warren Lee will allege that he is a resident of Valdosta, Lowndes County, Georgia.

5.  Defendant Liz Shumphard is a resident of Valdosta, Lowndes County, Georgia.

6.  Defendant Tyra Howard is a resident of Valdosta, Lowndes County, Georgia.

7.  Defendant Debra Bell is a resident of Valdosta, Lowndes County, Georgia.

8.  Defendant Kelisa Brown will allege that she is a resident of Valdosta, Lowndes County, Georgia.

9.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under Title VII of the Civil Rights Act of 1964 ("Title VII").

10.  Venue is proper in this district under 42 U.S.C. § 2000e-5(f)(3), in that the Plaintiff would have worked in this judicial district but for the unlawful employment practice.

## CONDITIONS PRECEDENT

11.  Plaintiff has exhausted his administrative remedies by timely filing EEOC charges of discrimination on April 24, 2020 (attached hereto as Exhibit A); and on July 15, 2020 (attached hereto as "Exhibit B").

12.  Pursuant to 42 U.S.C.S. § 2000e-5(e)(1), the EEOC charges were timely filed within 180 days of the last discriminatory act, in this case, the second vote for non-renewal of contract on February 11, 2020.

13.  Plaintiff raised in his EEOC charge the same allegations of race-based discrimination as set forth in this Complaint, further demonstrating administrative exhaustion.

14.  On or about March 22, 2021, the EEOC issued Plaintiff a Notice of Right to Sue for both EEOC charges.  (This Complaint has been filed within 90 days of receipt of that notice (attached hereto as "Exhibit C" and "Exhibit D").

## FACTUAL ALLEGATIONS

### A.  Coach Rodemaker's Success as Valdosta High School Football Coach.

15.  Coach Alan Rodemaker began coaching football at Valdosta High School in 2010.  At this time, he was an Assistant Coach.

16.  During his tenure at Valdosta High School, Coach Rodemaker was an employee of the Defendant School District and/or School Board.  He was a professional employee, and served the students and the citizens within the School District as both a gym teacher and football coach.

17.  In 2016, Coach Rodemaker was promoted to the position of Head Football Coach.  That year, and under his guidance, the Valdosta High School Football Team won the Georgia State Championship for Division 6A.  This was the first time the Valdosta High School Football Team had won the championship in 18 years.

18 .  In the subsequent three seasons, and still under the guidance of Head Coach Rodemaker, the Valdosta High School Football Team twice made it to the quarterfinals of the State Division 6A football championship.

19.  At the conclusion of the 2019-2020 season, the Football Team was set to return 17 of 22 starters to its roster.  The 2020-2021 Football Team was widely perceived to be a contender for another state title.

20.  As both a high school football coach and teacher, Coach Rodemaker's reviews and reputation were exemplary.

21.  Coach Rodemaker's personnel file reflecting his service at Valdosta High School was exemplary.  It and contained no complaints or evidence of misconduct.

**B.      January 28, 2020:  the First School Board Vote against Renew Coach Rodemaker's Football Coach Contract.**

22.  As of 2020, Coach Rodemaker had been offered, and accepted, an employment contract with the Valdosta Board of Education on an annual basis for each of the ten preceding years.

23.  Coach Rodemaker's contract as the Head Football Coach for the 2019-202 school year was set to expire on June 30, 2020.

24.  In January 2020, Dr. William "Todd" Cason, the Superintendent of the Valdosta City Schools, recommended that the School Board renew Coach Rodemaker's contract as Head Football Coach, for another year.

25.  At this time, the make-up of the Valdosta Board of Education had recently changed from a majority-white board to a majority-black board.  Instead

of five white members and four African-American members, the board became five African-American members and four white members.

26.  The five African-American members on the board are Defendants Warren Lee, Liz Shumphard, Tyra Howard, Debra Bell, and Kelisa Brown.

27.  The School Board held a regularly scheduled meeting on January 28, 2020.  The agenda for this meeting included a Board vote on Personnel.

28. Dr. Cason recommended that Coach Rodemaker's contract as Head Football Coach be renewed for the 2020-2021 school year.

29.  This recommendation was presented to the School Board for approval at the January 28, 2020 School Board meeting.

30.  The policy and custom of the School Board was to vote on all of the Superintendents recommendations for rehire in one vote, instead of considering each individual recommended employee separately.

31.  However, in breaking with this custom, Defendant Lee requested that the recommendation to renew Coach Rodemakers football coaching contract be considered separately from consideration of other employees.

32.  Presumably, Warren Lee, not having a valid justification for non-renewal, felt the need to separate consideration of Dr. Cason's recommendation to renew Coach Rodemaker's contract from consideration of Dr. Cason's

recommendation regarding other employees.  Thus, the Personnel List was divided into two lists:  an "A" list and a "B" List.

33.  As requested by Defendant Lee, Coach Rodemaker was the only employee identified on the "B" list.

34.  Consideration of the Personnel Recommendations made by Dr. Cason were discussed in executive session, outside the hearing of the public.  At the conclusion of the executive session, the School Board returned to public session.

35.  On motion made by Board Member Stacy Bush, the Board was asked to approve Dr. Cason's recommendation that Coach Rodemaker's contract as the Head Football Coach be renewed.  This motion was defeated by a vote of 4-5.  Those opposed to the motion to renew Coach Rodemaker were the five African American members of the School Board:  Defendants Lee, Shumphard, Howard, Brown, and Bell.

36.  None of the Defendants, who voted against Coach Rodemaker's renewal, provided a reason for that vote when the public portion of the January 28, 2020 School Board meeting reconvened after conclusion of the executive session.

**C.    *February 11, 2020:  the Second School Board Vote against Renewal of Coach Rodemaker's Football Coach Contract.***

37.  The local community was shocked when news of Coach Rodemaker's termination became public knowledge.  In response to public outcry and concern,

action on Dr. Cason's recommendation to renew Coach Rodemaker's football coaching contract was placed on the agenda for the February 11, 2020 School Board meeting.

38. When the February 11, 2020 School Board Meeting convened, Defendant Lee made a motion to remove consideration of Coach Rodemaker's renewal from the agenda. This motion was seconded by Defendant Brown. Defendant Lee's motion was defeated by a vote of 4-5, with Defendants Brown, Howard, Lee, and Shumphard voting in favor. The only Defendant who opposed Lee's attempt to remove this item from the Board's consideration was Defendant Bell.

39. During the public participation segment of this meeting, five individuals spoke against Coach Rodemaker. Each of these five individuals was African American.

40. Floyd Rose was one of the five African American individuals who spoke against renewing Coach Rodemaker's football coaching contract. Rose urged the black members of the School Board to "stand together" to reaffirm their previous decision to terminate Coach Rodemaker. Rose also reminded the black members of the board that the were "put there" by black votes.

41.   African American Alma Williams also spoke against the renewal of Coach Rodemaker's contract.  Her reasons were racially motivated - she stated that the color of her skin prevented her from advancing her career.  She further implied that black football players had been used by the white establishment to better the football program, without regard to the well-being of the black players.

42.  African American James Gatlin was not originally on the list to speak during the public participation portion of the meeting.  However, in response to a text message Gatlin sent to Defendant Lee during the School Board meeting, Mr. Gatlin's name was added to the list, and he was allowed to speak against renewal of Coach Rodemaker's coaching contract.

43.  Seven individuals spoke in support of Dr. Cason's recommendation to renew Coach Rodemaker's football contract.  The individuals speaking in support of Coach Rodemaker were both African Americans and Caucasian.

44.  One of these individuals, Sam Dennis, signed in to speak during the public comment portion of the School Board meeting.  However, his name was inexplicably "crossed off" the list.  Mr. Dennis' name was only returned to the list of those allowed to speak after Defendant Lee made arrangements for Mr. Gatlin to speak.

45.   At the conclusion of the public comment, the School Board members retired to executive session to discuss personnel matters.

46.   Again, Dr. Cason's recommendation to renew Coach Rodemaker's contract as Head Football Coach was separated out as its own agenda item.

47.   Again, Board Member Stacy Bush moved the Board to approve Dr. Cason's recommendation to renew Coach Rodemaker.

48.   Again, this motion was defeated by a vote of 4-5.  Those opposed to the motion to renew Coach Rodemaker were the five African American members of the School Board:  Defendants Lee, Shumphard, Howard, Brown, and Bell.

49.   Again, none of the Defendants provided a reason for their vote not to renew Coach Rodemaker's contract as Head Football Coach during the public portions of the February 11, 2020 School Board Meeting.

**D.    *The School Board's Decision was Motivated by Racial Animus.***

50.   Kelly Wilson was  member of the School Board in 2020, during the time that both votes to renew Coach Rodemaker as the Head Football Coach came to the floor for consideration.  Ms. Wilson, who voted in favor of renewing Coach Rodemaker's contract, confirmed that race was a factor in the non-renewal of Alan Rodemaker.  (See Kelly Wilson, Depo. p. 21, attached hereto as "**Exhibit E**").

51.  The School Board has failed to provide Dr. Cason with any evidence that his recommendation to renew Coach Rodemaker's football coaching contract should not be honored.

52.  A number of additional factors further demonstrate that the actions taken by the Board and its African American members were racially motivated and discriminatory.  These factors include, but are not limited to, the following:

a.  The African-American Board members participated in public meetings where they discussed their intent to vote against the renewal of Coach Rodemaker's contract as Head Football Coach.  Upon information and belief, these meetings involved discussions of replacing Coach Rodemaker with a black coach, and took place at an African-American church.  At these meetings, the Defendant Board Members improperly discussed school business.

b.  The African-American Board members communicated amongst themselves, via email and/or "text messaging" regarding their concerted plan to vote to non-renew Coach Rodemaker as the Head Football Coach.

c.  Warren Lee has previously stated that Valdosta High School

needed a head football coach of color, not a white head coach (See

Bill Love, Depo. p. 8, attached hereto as "Exhibit F").

d.  Warren Lee had insisted in the past than an "A" or "C"

designation be placed on the job applications which were brought

before the Board, a code as to whether the applicant was African

American or Caucasian (See Bill Love, Depo. p. 14, attached hereto as

"Exhibit G").

53.  Furthermore, the majority black membership of the School Board was

initially invested in replacing Coach Rodemaker with a black head coach.

Potential African American candidates for this job included Maurice Freeman,

Kareem Reid, Robert Edwards, Cliff Fedd, Dondrell Pinkins, and possibly others.

However, these individuals would not accept or actively pursue the coaching

position.

54.  As a result of not being able to find a black candidate, and in efforts to

cover up their ill-advised decision to terminate Coach Rodemaker, the School

Board voted, again along racial lines, to hire controversial football coach Rush

Probst.  Each of the Defendants each voted in favor of hiring Rush Probst.

55.  After the Board voted in favor of hiring of Rush Propst, a secret tape recording was released, in which Coach Propst can be heard admitting to the use of what he termed "funny money" to illegally recruit players.

56.  Probst was removed as the Head Football Coach in April of 2021. When it became clear that a new coach was needed, the School Board voted to name Shelton Felton, an African American, as interim head coach.

57.  At the time he was hired and interim Head Coach, Felton had been recently terminated by the University of Tennessee football program in early 2021for recruiting violations.

58.  Felton was a far-less qualified candidate for the position than was Coach Rodemaker.  Coach Rodemaker was superior to Felton by virtue of tallent, leadership, and character.

59.  Coach Rodemaker was non-renewed by the Valdosta Board of Education for reasons none other than his race. This is evidenced by the Board's original desire to hire an African American candidate (as expressed by Board Member Warren Lee), coupled with the Board's subsequent hire of a less-qualified African American candidate with a questionable coaching history.

60.  As a result of Defendants' discrimination, Coach Rodemaker was wrongfully denied the ability to continue in his employment. He was denied

employment opportunities providing substantial compensation and benefits, thereby entitling him to equitable monetary relief; and has suffered anguish, humiliation, distress, inconvenience, and loss of enjoyment of life because of Defendants' actions, thereby entitling him to compensatory damages.

61. Plaintiff suffered damages as a result of Defendants' unlawful discriminatory actions, including emotional distress, past, present, and future lost wages and benefits, and the costs of bringing this action.

## CAUSES OF ACTION

### COUNT ONE:

**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED
RACE DISCRIMINATION AS TO
DEFEINDANT CITY OF VALDOSTA BOARD OF EDUCATION,
or, in the Alternative,
VALDOSTA CITY SCHOOL DISTRICT**

62. Plaintiff repeats and realleges paragraphs 1 through 61 hereof, as if fully set forth herein.

63. Plaintiff, a Caucasian male, was fully qualified for his position as Head Football Coach in January and February of 2020.

64. Despite these qualifications, the School Board voted, along racial lines, against the School Superintendent's recommendation that Coach Rodemaker's contract as Head Football Coach be renewed.

65.  The five African American members of the School Board (who are also named as Defendants herein) constitute a majority membership of the School Board.

66.  The five African American members of the School Board who voted against renewal of Coach Rodemaker's football coaching contract were motivated by race.

67.  The School Board's vote against renewal of Coach Rodemaker's football coaching contract was an adverse employment action.  In making this vote, the School Board acted on behalf of the School District.

68.  Title VII protects members of both majority and minority groups from race-based discrimination.  Plaintiff, although traditionally part of a majority group, is part of a protected class in this instance, where he was of a different race than the majority of the Board members and faced disparate treatment as a result.

69.  By voting to non-renew his contract and subsequently attempting to fill the position with only African American candidates, Defendants discriminated against Coach Rodemaker on the basis of his race.

70.  By the conduct described in the preceding paragraphs, Defendants have intentionally discriminated against Coach Rodemaker by non-renewing him due to his race.

71.  As a direct and proximate result of the Individual Defendants violation of Title VII, Plaintiff has been damaged and is entitled to the relief set forth herein.

72.  Some or all of these School Board members held secret meetings regarding Coach Rodemaker, and some members even expressed their preference for an African-American coach.

## COUNT TWO:

## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED RACE DISCRIMINATION AS TO THE INDIVIDUAL DEFENDANTS, EACH IN THEIR CAPACITY AS AGENTS OF THE EMPLOYER

73.  Plaintiff repeats and realleges paragraphs 1 through 61 hereof, as if fully set forth herein.

74.  Each of the Individual Defendants - i.e., Defendants Lee, Shumphard, Howard, Bell, and Brown, were African-American members of Defendant School Board.

75.  As such, each of the Individual Defendants acted as agents of Defendant School Board and/or Defendant School District.

76.  On two separate occasions -- January 24, 2020 and February 11, 2020 -- each of the Individual Defendants voted against the School Superintendent's

recommendation that Coach Rodemaker's contract as Head Football Coach be renewed.

77.  These actions constitute an adverse employment action.

78.  The original goal each of Individual Defendant was to terminate Coach Rodemaker's employment by the School Board and/or the School District, so that he could be replaced by an African American coach.

79.  Through concerted and purposeful action, Defendants coordinated their efforts and vote to non-renew Coach Rodemaker and further to ultimately replace him with a less qualified African-American candidate.  Race was the motivating factor in the decision to non-renew.

80.  As a direct and proximate result of the Individual Defendants' violation of Title VII, Plaintiff has been damaged and is entitled to the relief set forth herein.

## COUNT THREE:

### CONSPIRACY AS TO
### THE INDIVIDUAL DEFENDANTS

81.  Plaintiff repeats and realleges paragraphs 1 through 61 hereof, as if fully set forth herein.

82.  Each of the Individual Defendants - i.e., Defendants Lee, Shumphard, Howard, Bell, and Brown, were African-American members of Defendant School Board.

83.  The act of discriminating against an individual on the basis of race is an unlawful act.

84.  The Individual Defendants entered an agreement to deprive the Plaintiff, a white male, of his employment as Head Football Coach for Valdosta High School, on the basis of his race.

85.  The Individual Defendants, each as members of the School Board, knew that their votes when combined were enough to accomplish their illegal objective

86.  By voting against renewal of Coach Rodemaker's football coaching contract, each Individual Defendant committed an overt act in furtherance of their illegal objective - i.e., to deprive Coach Rodemaker of this coaching position on the basis of his race.

87.  Through concerted and purposeful action, Defendants coordinated their efforts and vote to non-renew Coach Rodemaker and further to ultimately replace him with a less qualified African-American candidate.  Race was the motivating factor in the decision to non-renew.

88.  Plaintiff suffered damages to his reputation and employability as a result of Defendants' unlawful discriminatory actions.

89.  The decision of each Individual Defendant was motivated by racial animus.

## COUNT FOUR:

## CLAIM FOR ATTORNEYS FEES
## PURSUANT TO 42 U.S.C. § 2000e-5(k) and O.C.G.A. § 13-6-11

90.  Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 61  above as though fully set forth herein.

91.  All individual and municipal Defendants were acting under color of state law at the time they caused injury to Plaintiff's Decedent.

92.  Defendants have acted in bad faith, have been stubbornly litigious, or have caused Plaintiff unnecessary trouble and expense.

93.  Plaintiff is entitled to an award of attorneys fees pursuant to O.C.G.A. § 13-6-11.

94.  Plaintiff is also entitled to a reasonable allowance for attorneys fees as part of his costs.   42 U.S.C. § 2000e-5(k).

## COUNT FIVE:

## CLAIM FOR PUNITIVE DAMAGES
## AS TO ALL DEFENDANTS

95.  Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 61 above as though fully set forth herein.

96.  As described herein, the conduct of the Defendants showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

97.  Plaintiff, is entitled to punitive damages solely to punish, penalize, or deter the Defendants.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Alan Rodemaker prays for the following relief:

(A)    That summons and process issue and be served upon the Defendants;

(B)    That Plaintiff be awarded an appropriate sum to compensate him for the injuries and damages sustained as a result of Defendants wrongful and/or tortious acts;

(C)    That Plaintiff be awarded for his past and future loss of wages and benefits, plus interest;

(D)    That Plaintiff be awarded liquidated damages incurred in connection with this action, equal to the sum amount of backpay and interest;

(E)    That Plaintiff be awarded attorneys' fees and costs of litigation pursuant to O.C.G.A. § 13-6-11 and 42 U.S.C. § 2000e-5(k).

(F)    That Plaintiff be awarded punitive damages;

(G)    For a trial by jury comprised of twelve persons; and

(H)    For such other and further relief as this Court deems just and proper.

THIS THE  18th  OF  JUNE , 2021.

SAVAGE & TURNER, P.C.

By:    /s/ Brent J. Savage
Brent J. Savage
Georgia Bar No. 627450

102 East Liberty Street, 8th Floor
Post Office Box 10600
Savannah Georgia 31412
Phone:  (912) 231-1140
Fax: (912) 232-4212
lhatcher@savagelawfirm.net