## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

**ALAN RODEMAKER**,

       Plaintiff,

v.

                                   Civil Action No. 7:21-CV-76 (HL)

**CITY OF VALDOSTA BOARD OF EDUCATION, et al.,**

       Defendants.

## ORDER

Plaintiff Alan Rodemaker brought this action for alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, following Defendants' decision not to renew his employment as the head football coach at Valdosta High School. Now before the Court are Defendants Warren Lee, Liz Shumphard, Tyra Howard, Debra Bell, and Kelisa Brown's Motions to Dismiss. (Docs. 7, 8, 11, 12, 13). Also before the Court is Defendant the City of Valdosta Board of Education or, in the alternative, the Valdosta City School District's Motion for Summary Judgment. (Doc. 31). Following a hearing on May 19, 2022, and after careful consideration, the Court **GRANTS** Defendants' motions.

## I.    BACKGROUND

Alan Rodemaker began his career at Valdosta High School as an assistant football coach and gym teacher in 2010. (Doc. 1, ¶¶ 15-16). In 2016, Rodemaker became the head football coach. (Id. at ¶ 17). Under Rodemaker's guidance

during the 2016 season, the Valdosta High School football team won the Georgia State Championship for Division 6A for the first time in eighteen years. (Id.). The team reached the quarterfinals of the state championship two of the next three years. (Id. at ¶ 18). With seventeen of twenty-two starting players set to return for the 2020-2021 school year, the football community widely perceived Valdosta High School as a contender for another state title. (Id. at ¶ 19).

Rodemaker was well regarded as both a teacher and a football coach. (Id. at ¶¶ 20-21). For ten years, the Valdosta Board of Education ("School Board" or "Board") renewed Rodemaker's teaching and coaching contract without consequence. (Id. at ¶ 22). In January 2020, the Superintendent of Valdosta City Schools again recommended renewing Rodemaker's contract, which was set to expire on June 30, 2020.[1] (Id. at ¶¶ 23-24, 28). The Superintendent presented his recommendation at the School Board's January 28, 2020 meeting. (Id. at ¶ 29). Ordinarily, the School Board members consider all of the Superintendent's contract renewal recommendations in a single vote rather than reviewing each contract individually. (Id. at ¶ 30). During this meeting, however, Defendant Warren Lee moved the Board to consider Rodemaker's contract separately. (Id. at ¶ 31-33). The Board ultimately voted 4-5 not to renew Rodemaker's contract.

---

[1] The City of Valdosta Board of Education is the governing body for the City of Valdosta School District. (Id. at ¶ 3). The Valdosta City School Superintendent makes employment recommendations to the Board of Education. (Id.). The Board evaluates and acts upon those recommendations. (Id.).

(Id. at ¶ 35). The vote was divided along racial lines, with each of the five black members of the School Board, Defendants Lee, Liz Shumphard, Tyra Howard, Kalisa Brown, and Debra Bell, voting to end Rodemaker's coaching tenure with the school district. (Id.). These Board members provided no explanation for their decision. (Id. at ¶ 36).

In response to public outcry, the Superintendent's recommendation to renew Rodemaker's contract was included on the School Board's February 11, 2020, meeting agenda. (Id. at ¶ 37). When the meeting convened, Defendant Lee moved to remove the item from the agenda. (Id. at ¶ 38). Defendants Brown, Howard, and Shumphard supported Lee's motion, but the motion was defeated 4-5, and the recommendation to renew Rodemaker's contract was once again put to a vote. (Id. at ¶¶ 45-48). The Board returned a 4-5 vote opposing renewal of Rodemaker's contract. (Id. at ¶ 48). The decision remained divided along racial lines. (Id.). Rodemaker, who is white, alleges that the School Board's decision to end his employment was motivated by racial animus. (Id. at ¶¶ 50, 52-53, 59).

Rodemaker filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 24, 2020, alleging that the School Board discriminated against him based on his race. (Doc. 1-1). He filed a second Charge of Discrimination on July 15, 2020. (Doc. 1-2). Around the same time, on April 23, 2020, Rodemaker filed a lawsuit against Defendants Lee, Brown, Howard, Shumphard, and Brown in their individual capacities, alleging

Defendants discriminated against him based on his race in violation of 42 U.S.C. § 1981 and § 1983. See Rodemaker v. Shumphard, Case No. 7:20-CV-75 (HL) (M.D. Ga. Apr. 23, 2020). The lawsuit was based on the same sequence of events outlined in the present action.

The individual Defendants moved to dismiss Plaintiff's original lawsuit, arguing that they were entitled to qualified immunity because Rodemaker failed to allege sufficient facts to state a race discrimination claim under § 1981 and § 1983. The Court expressed skepticism regarding the plausibility of Rodemaker's claims, calling it a "close case," but nevertheless concluded Rodemaker adequately alleged a violation of a clearly established law. Rodemaker v. Shumphard, Case No. 7:20-CV-75 (HL) (M.D. Ga. Dec. 1, 2020). The Court therefore denied Defendants' motions to dismiss and allowed the case to proceed. Id. Defendants appealed. On June 8, 2021, the Eleventh Circuit Court of Appeals found the Court erred by not dismissing Rodemaker's complaint and vacated the Court's decision. Rodemaker v. Shumphard, 859 F. App'x 450, 453 (2021). The Court then dismissed Rodemaker's case and entered judgment for Defendants on September 8, 2021.

The EEOC issued a Dismissal and Notice of Rights on March 22, 2021. (Docs. 1-3, 1-4). Rodemaker filed this action on June 18, 2021, alleging Defendants discriminated against him based on his race in violation of Title VII and that the individual Defendants conspired to deprive him of his position as the

head football coach. (Doc. 1). This lawsuit and the previous lawsuit share the same nucleus of operative facts, namely that the School Board voted not to renew Plaintiff's employment contract and that the vote fell along racial lines. Having failed to succeed on his individual capacity claims against the Board members, Plaintiff now names as Defendants the School Board and the five black School Board members as agents of the School Board.

In this action, Rodemaker includes additional facts concerning his replacement as head football coach. Rodemaker alleges that despite their best effort to hire a black man to fill his position, the School Board was unable to secure a candidate. (Doc. 1, ¶ 53). The Board extended an offer to Rush Probst, a white man. (Id. at ¶ 54). A scandal involving Probst soon erupted, and the Board rescinded the offer in April 2021. (Id. at ¶¶ 55-56). The Board thereafter named Shelton Felton, a black man, as head coach. (Id. at ¶ 56). Rodemaker claims the University of Tennessee terminated Felton and that he is an inferior coaching candidate than Rodemaker. (Id. at ¶¶ 57-58).

## II.   MOTIONS TO DISMISS

In his Complaint, Plaintiff asserts two claims against the individual Defendants. First, Plaintiff alleges Defendants, as agents of the School Board and/or the School District, violated his rights under Title VII. Plaintiff, who is white, contends Defendants, the five black members of the Board, terminated his employment as the head football coach with the specific intention of replacing

him with a black coach. Plaintiff further alleges the individual Defendants entered into a conspiracy to deprive him of his employment based on his race. Defendants move under Federal Rule of Civil Procedure 12(b)(6) to dismiss each of these claims for failure to state a viable cause of action.

### A.    Motion to Dismiss Standard

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept "all well-pleaded facts . . . as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271,1273 n.1 (11th Cir. 1999). To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). While a complaint need not contain detailed factual allegations, it must provide "more than labels or conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. The allegations "must be enough to raise a right of relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id.

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's

liability, it stops short of the line between possibility and plausibility of entitlement to relief. Iqbal, 556 U.S. at 678. Further, while a court must accept all factual allegations in a complaint as true, this principle "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. Id. The complaint must "give the defendant fair notice of what the [plaintiff's] claim is and the grounds upon which it rests." Twombly, 550 U.S. at 556 (citation and internal quotations omitted).

## B. Discussion

### 1. Title VII

Defendants argue, and Plaintiff does not dispute, that members of a board of education cannot be held liable under Title VII in either their individual or official capacities. "The relief granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act." Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991) (emphasis in original) (explaining that recovery under Title VII shall be against the employer, either by naming the employer directly or by naming a supervisory employee as an agent of the employer); see also 42 U.S.C. § 2000e(b) (definition of "employer"). The Eleventh Circuit accordingly has consistently held that individual school board members cannot be sued in their individual capacities under Title VII. See Quigg v. Thomas Cnty. Sch. Dist., 814 F.3d 1227, 1234 n.3 (11th Cir. 2016); Hinson v. Clinch Cnty., Ga. Bd. of Educ., 231 F.3d 821, 827 (11th Cir.

2000); Busby, 931 F.2d at 772. The Court therefore **GRANTS** Defendants' motion to dismiss Plaintiff's Title VII claims against the individual Defendants.

### 2.    Conspiracy

Plaintiff asserts a conspiracy claim against the individual Defendants in Count Three of his Complaint. According to Plaintiff, the five black School Board members entered into an agreement to deprive him of his position as the head football coach at Valdosta High School because he is white. Plaintiff alleges these Board members knew their block vote would accomplish their goal of removing Plaintiff and replacing him with a black coach.

Plaintiff's Complaint does not articulate a specific legal basis for his conspiracy claim. However, in his response to Defendants' motion to dismiss, Plaintiff states that his conspiracy claim arises under 42 U.S.C. § 1985(3). Defendants argue that to the extent Plaintiff's conspiracy claim is based on § 1985(3), he has failed to state a claim. Alternatively, Defendants contend Plaintiff's conspiracy claim is barred by the intracorporate conspiracy doctrine.

### a.    Section 1985

Section 1985(3) makes it unlawful for two or more persons to conspire for the purpose of depriving any person or class of persons of equal protection of the laws or equal protection or immunities under the laws. See 42 U.S.C. § 1985(3). To state a claim under § 1985(3), "a plaintiff must allege: (1) defendants engaged in a conspiracy; (2) the conspiracy's purpose was to directly or indirectly deprive

a protected person or class the equal protection of the laws, or equal privileges and immunities under the laws; (3) a conspirator committed an act to further the conspiracy; and (4) as a result, the plaintiff suffered injury to either his person or his property, or was deprived of a right or privilege of a citizen of the United States." Jimenez v. Wellstar Health Sys., 596 F.3d 1304, 1312 (11th Cir. 2010). "The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Griffin v. Breckenridge, 403 U.S. 88, 102 (1971).

"Section 1985(3) provides no substantive rights itself; it merely provides a remedy for violation of the rights it designates." Great Am. Fed. Sav. & Loan Ass'n v. Novotny, 442 U.S. 366, 372 (1979). "The only rights the Supreme Court has expressly declared enforceable . . . under § 1985(3) are the right to interstate travel and the right against involuntary servitude." Jimenez, 596 F.3d at 1312. In contrast, the Supreme Court has specifically held that § 1985(3) "may not be invoked to redress violations of Title VII." Id. at 378; see also Jimenez, 596 F.3d at 1312 ("[C]onspiracies to violate rights protected by Title VII cannot form the basis of § 1985(3) suits."); but see Dickerson v. Alachua Cnty. Comm'n, 200 F.3d 761, 766-67 (11th Cir. 2000) (holding that Title VII does not preempt a § 1985(3) claim arising out of the same underlying facts when the § 1985(3) claim is based on an assertion of a constitutional right). In Novotny, the Supreme Court

9

reasoned that permitting a plaintiff to use § 1985(3) to enforce a right created under Title VII would impair the effectiveness of Title VII's remedial scheme. Id.

Plaintiff's Complaint not only fails to invoke § 1985(3) but also is devoid of any allegations concerning a deprivation of a constitutional right. Unlike Dickerson, where the plaintiff's § 1985(3) claim was based on alleged violations of the Fourteenth Amendment rights to equal protection of the laws and due process, 200 F.3d at 766, Plaintiff's conspiracy claim makes no mention of a specific constitutional right. Plaintiff alleges only that the individual Defendants entered into an agreement to vote in unison to terminate Plaintiff's employment as the head football coach because he is white and because they desired a black coach. These factual allegations plainly fall under the province of Title VII. Plaintiff's § 1985(3) claim is thus preempted by Title VII. Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's conspiracy claim.

### b.   Intracorporate Conspiracy Doctrine

Even if Title VII did not preempt Plaintiff's § 1985(3) claim, Plaintiff's conspiracy claim is barred by the intracorporate conspiracy doctrine. Under the intracorporate conspiracy doctrine,

> a corporation's employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves or with the corporation. This doctrine stems from basic agency principles that "attribute acts of agents of a corporation to the corporation, so that all of their acts are considered to be those of a single legal actor." The reasoning behind the intracorporate conspiracy doctrine is that it is not possible for a single legal entity consisting of the corporation

10

and its agents to conspire with itself, just as it is not possible for an
individual person to conspire with himself.

Dickerson, 200 F.3d at 767 (quoting Dussouy v. Gulf Coast Inv. Corp., 660 F.2d

594, 603 (11th Cir. 2000)). The doctrine applies both to private corporations and

public government entities. Id.

Plaintiff argues, without authority, that the intracorporate conspiracy

doctrine does not apply because Defendants are elected officials and not

employees of the Board of Education. Plaintiff's argument ignores that the

doctrine applies to agents, not just employees. See Grider v. City of Auburn, Ala.,

618 F.3d 1240, 1261 (11th Cir. 2010). Elected or not, Defendants together

comprise and indisputably serve as agents of the School Board, a single public

entity. As agents acting on behalf of a single entity, Defendants cannot conspire

with themselves or the entity to deprive Plaintiff of his employment for an

unlawful purpose. See Dickerson, 200 F.3d at 769.

Plaintiff's assertion that the doctrine does not apply because Defendants

conspired with non-Board members is equally unavailing. Plaintiff's Complaint

contains no allegations to that effect. While Plaintiff pled that the Board permitted

community members to speak on the subject of Plaintiff's contract renewal at a

public hearing and that Defendants improperly discussed school business with

persons outside of the Board, Plaintiff's Complaint in no way links these other

individuals to the alleged conspiracy between Defendants to vote a certain way.

Plaintiff further argues that certain exceptions preclude application of the intracorporate conspiracy doctrine in this case. Though never explicitly adopted by the Eleventh Circuit, the Circuit has discussed exceptions to the intracorporate conspiracy doctrine rule observed by other circuits. Id. at 770. Other jurisdictions recognize exceptions (1) for "convictions involving criminal charges of conspiracy;" (2) for acts outside of an agents' employment; (3) where the employees have an "independent personal stake" in their unconstitutional acts; or (4) where the employees "engage in a series of discriminatory acts as opposed to a single action" over a prolonged period of time. Id. at 769-70.

Plaintiff contends three exceptions apply in this case. First, Plaintiff argues Defendants acted outside the scope of the Board of Education's legal purpose. Next, Plaintiff suggests Defendants' conduct was criminal in nature, so they should not be afforded the shield of the intracorporate conspiracy doctrine. Finally, Plaintiff argues Defendants engaged in a series of discriminatory acts rather than a single action.

The only one of these exceptions the Eleventh Circuit has applied involves application of the intracorporate conspiracy doctrine where the alleged conspiratorial conduct violates federal criminal law. See McAndrew v. Lockhead Martin Corp., 206 F.3d 1031, 1034 (11th Cir. 2000). In McAndrew, the Eleventh Circuit held "that just as the intracorporate conspiracy doctrine cannot shield a criminal conspiracy from prosecution under the federal criminal code, the

12

doctrine cannot shield the same conspiracy, alleging the same criminal wrongdoing, from civil liability arising under" § 1985(3). Id. This case involves an alleged civil conspiracy. Plaintiff's Complaint asserts no allegations of a criminal conspiracy involving a violation of the federal criminal code. Accordingly, this exception does not apply.

Plaintiff likewise has articulated no facts in support of his claim that Defendants had a personal stake in removing Plaintiff as the head football coach. Plaintiff also has not adequately alleged that Defendants engaged in a series of discriminatory acts over an extended period of time. Rather, Plaintiff's case arises out of a vote, and a re-vote shortly thereafter, not to renew Plaintiff's employment contract. Concluding that none of the exceptions to the intracorporate conspiracy doctrine apply, the Court finds that Plaintiff has failed to state a viable conspiracy claim and **GRANTS** Defendants' motion to dismiss Count Three of Plaintiff's Complaint.

### 3.    Attorney's Fees and Punitive Damages

Defendants move the Court to dismiss Plaintiff's claims for attorney's fees and punitive damages. Having determined that Plaintiff failed to state a claim under Title VII, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's claim for attorney's fees. See 42 U.S.C. § 2000e-5(k) (allowing award of attorney's fees to the prevailing party). There being no award of actual damages, Plaintiff is not

entitled to punitive damages. The Court therefore **GRANTS** Defendants' motion to dismiss Plaintiff's demand for punitive damages.

## III.   MOTION FOR SUMMARY JUDGMENT

Defendant City of Valdosta Board of Education or, in the alternative, the Valdosta City School District ("School Board") moves for summary judgment as to Counts One, Four, and Five of Plaintiff's Complaint. Defendant argues Plaintiff's Title VII claims are barred by the doctrine of res judicata and that, consequently, Plaintiff's claims for attorney's fee and punitive damages are subject to dismissal. The Court concurs and **GRANTS** Defendant's Motion for Summary Judgment. (Doc. 31).

### A.   Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex, 477 U.S. at 323 (internal quotation marks omitted). If the movant meets this burden, the burden shifts to the party opposing summary judgment to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the movant is not entitled to judgment as a matter of law. Id. at 324-26. This evidence must consist of more than conclusory allegations. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### B.    Discussion

Res judicata is a "judicially made doctrine" whose purpose is to give "finality to parties who have already litigated a claim" and to promote judicial economy. In re Atlanta Retail, Inc., 456 F.3d 1277, 1284 (11th Cir. 2006). "It is by now hornbook law that the doctrine of res judicata bars the filing of claims which were raised or could have been raised in an earlier proceeding." Maldonado v. U.S. Att'y Gen., 664 F.3d 1369, 1375 (11th Cir. 2011). To invoke res judicata, the moving party must establish that the prior decision (1) was rendered by a court of competent jurisdiction; (2) was final; (3) involved the same parties or their privies; and (4) involved the same causes of action. TVPX ARS, Inc. v. Genworth Life

and Annuity Ins. Co., 959 F.3d 1318, 1325 (11th Cir. 2020). "If even one of these elements is missing, res judicata is inapplicable." Manning v. City of Auburn, 953 F.2d 1355, 1358 (11th Cir. 1992).  "[T]he burden is on the party asserting res judicata . . . to show that the later-filed suit is barred." In re Piper Aircraft Corp., 244 F.3d 1289, 1296 (11th Cir. 2001) (citation omitted).

The parties here do not dispute the first two elements. The Court must only determine whether Defendant has established the third and fourth elements.

### 1.    Same Parties or their Privies

Plaintiff's previous lawsuit named as Defendants Warren Lee, Liz Shumphard, Tyra Howard, Debra Bell, and Kelisa Brown, the five black School Board members, in their individual capacities. In the present action, Plaintiff asserts claims against the School Board along with the same five Board Members "individually as [a]gents" of the School Board. Plaintiff argues, and Defendants generally agree, that the relationship between the School Board of and the Board Members in their individual capacities does not automatically establish privity. See Lozman v. City of Riviera Beach, Fla., 713 F.3d 1066, 1075 n.7 (11th Cir. 2013) ("Generally, a government official sued in his or her official capacity is considered to be in privity with the government, but a government official sued in his or her individual capacity is not."); 18A Wright, Miller & Cooper, Federal Practice and Procedure § 4458, at 567 & n.20 (2d ed. 2002) ("[A] judgment against a government or one government official does not bind a

16

different official in subsequent litigation that asserts a personal liability against the official."). However, Defendants contend other circumstances create privity for purposes of the res judicata analysis.

"Identity of parties concerns two sets of persons": (1) "those persons who were actual parties in the original action"; or (2) those persons "who are or were in privity with the parties to the original suit." N.A.A.C.P. v. Hunt, 891 F.2d 1555, 1560 (11th Cir. 1990). Privity is defined as "a relationship between one who is a party of record and a nonparty that is sufficiently close so a judgment for or against the party should bind or protect the nonparty." Id. (quoting Hart v. Yamaha-Parts Distribs., Inc., 787 F.2d 1468, 1472 (11th Cir. 1986)). Courts have identified a variety of "substantive legal relationship[s]" that establish privity for res judicata purposes. See Echeverria v. Bank of Am., N.A., 632 F. App'x 1006, 1008 (11th Cir. 2015) (citing Taylor v. Sturgell, 553 U.S. 880, 894 & n.8 (2008)). For example, nonparty preclusion may exist when there is an agency relationship; when the nonparty was adequately represented by someone who was a party to the suit; or when the nonparty assumed control over the litigation in which the judgment was issued. See Taylor, 553 U.S. at 2172-73 (listing six categories of exceptions to the rule against nonparty exclusion).

The School Board was not named as a party in the prior litigation. Accordingly, in order for claim preclusion to apply, the School Board must demonstrate privity existed with the five individual School Board members. As

17

mentioned, the School Board and School Board members are not necessarily in privity since Plaintiff's original lawsuit asserted claims against the Board members in their individual capacities. Defendant argues res judicata still precludes Plaintiff's claims against the Board because the Board members served as agents of the School Board. "A principal-agent relationship is one kind of 'substantive legal relationship' that establishes privity for claim preclusion purposes." Echeverria, 632 F. App'x at 1008 (quoting Taylor, 553 U.S. at 894 & n.8). "[I]t is settled that a judgment exonerating a servant or agent from liability bars a subsequent suit on the same cause of action against the master or principal based solely on respondeat superior." Citibank, N.A. v. Data Lease Fin. Corp., 904 F.2d 1498, 1502 (11th Cir. 1990) (quoting Lober v. Moore, 417 F.2d 714, 717-18 (D.C. Cir. 1969)).

The Eleventh Circuit applied this principle in Citibank to bar claims against the financial institution based on a prior judgment in favor of seven individual directors of the bank. Id. The Court explained that privity between Citibank and the seven directors did not exist solely because the opposing party made identical claims against each of them:

> When a person suffers injury as the result of the concurrent or consecutive acts of two or more persons, he has a claim against each of them. . . . Accordingly, a judgment for or against one obligor does not result in the merger or bar of the claim that the injured person may have against another obligor.

Id. (quoting Hart, 787 F.2d at 1473). Rather, privity arose because the claims against Citibank were based on the alleged wrongful acts of the bank's agents and not on any action by the bank itself. Id. The Circuit Court approvingly noted the Fifth Circuit's observation that "[m]ost other federal circuits have concluded that employer-employee or principal-agent relationships may ground a claim preclusion defense, regardless which party to the relationship was first sued." Id. (quoting Lubrizol Corp. v. Exxon Corp., 871 F.2d, 1279, 1288 (5th Cir. 1989)).

Both the previous lawsuit and this lawsuit involve a single set of events: the decision of the School Board not to renew Plaintiff's employment contract. In both cases, Plaintiff alleges the five black School Board members voted to remove Plaintiff as the head football coach at Valdosta High School because he is white. Plaintiff asserts no allegations specific to any actions taken by the School Board. Instead, the premise of both lawsuits is that the individual Defendants, as agents of the School Board, acted on behalf of the Board. Based on these circumstances, and the Eleventh Circuit's reasoning articulated in Citibank, the Court is satisfied that the School Board has shown it is in privity with the School Board members.

Moreover, the School Board's interests were adequately represented in the previous lawsuit. The Supreme Court has "recognized an exception to the general rule when, in certain limited circumstances, a person, although not a party, has his interests adequately represented by someone with the same

19

interests who is a party." <u>Richards v. Jefferson Cnty., Ala.</u>, 517 U.S. 793, 798 (1996). Defendant argues, and Plaintiff does not contest, that the basis for liability in the previous lawsuit—the individual Defendants' alleged acts of racial discrimination against Plaintiff—is the same basis alleged for the School Board's liability in this case. The Board consequently shares a "commonality of interests for purposes of defending against [Plaintiff's] claim." <u>See</u> <u>McDonald v. Hillsborough Cnty. Sch. Bd.</u>, 821 F.2d 1563, 1566 (11th Cir. 1987). Plaintiff also does not dispute Defendant's assertion that the School Board provided counsel for the individual Defendants in the previous action and exerted substantial control over the defense. <u>See</u> Restatement (Second) of Judgments § 39 (1982) ("A person who is not a party to an action but who controls or substantially participates in the control of the presentation on behalf of a party is bound by the determination of issues decided as though he were a party."). Both of these factors support a finding of privity.

Having concluded that there is privity between the School Board and the five individual School Board members, the Court finds Defendant has met its burden of establishing the third res judicata element.

### 2.  Same Cause of Action

Plaintiff's original lawsuit asserted claims against the five individual School Board members for racial discrimination in violation of § 1981 and § 1983. In the present action, Plaintiff alleges the School Board is liable under Title VII for

allegedly terminating Plaintiff's employment contract based on his race. Plaintiff does not dispute that the two actions arise out of the same sequence of events. However, Plaintiff argues that his Title VII claims could not have been raised in the prior action because Plaintiff did not name the School Board as a Defendant and because Plaintiff had not yet exhausted his administrative remedies with the EEOC and so could not have included the Title VII claim.

Claims are part of the same "cause of action" when they "arise out of the same transaction or series of transactions." Piper, 244 F.3d at 1297. The doctrine of res judicata "is concerned with the substance, and not the form, of the proceedings." Trustmark Ins. Co. v. ESLU, Inc., 299 F.3d 1265, 1270 (11th Cir. 2002). Thus, "if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, th[en] the two cases are really the same 'claim' or 'cause of action' for purposes of res judicata." Piper, 244 F.3d at 1297 (citation omitted). In resolving whether the facts arise out of the same transaction or series of transactions, the court must ask "whether the plaintiff could, or rather should, have brought the second claim with the first lawsuit." Trustmark, 299 F.3d at 1270. Res judicata acts as a bar "not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same operative nucleus of fact." Manning, 953 F.2d at 1358-59 (quotation marks and citation omitted).

Plaintiff asserts he could not have raised his Title VII claim in his previous lawsuit, so res judicata should not now bar the claim. Plaintiff filed the original lawsuit on April 23, 2020, the day before he filed his Charge of Discrimination with the EEOC. According to Plaintiff, because he had not yet received a right to sue letter from the EEOC, he could not pursue his Title VII claim in conjunction with his § 1981 and § 1983. Plaintiff is correct that his Title VII claim was not yet ripe.[2] However, the Eleventh Circuit in Jang v. United Techs. Corp., 206 F.3d 1147, 1149 (11th Cir. 2000), plainly held that the lack of administrative exhaustion does not impact the bar against claim splitting.

The plaintiff in Jang filed suit against his former employer under the Americans with Disabilities Act ("ADA") and the Florida Civil Rights Act, along with a breach of contract claim. Id. at 1148. The district court deemed the breach of contract claim as insufficient as a matter of law and found the Florida Civil Rights Act claim time barred. Id. The Court dismissed the plaintiff's ADA claim because the plaintiff had not obtained a right to sue notice. Id. After receiving a

---

[2] A plaintiff seeking relief under Title VII must first exhaust his administrative remedies by filing a charge of discrimination with the EEOC. See 42 U.S.C. § 2000e-5(b) and (f)(1). The purpose of the exhaustion requirement is to allow the EEOC to "have the first opportunity to investigate the alleged discriminatory practices" so it can "perform its role in obtaining voluntary compliance and promoting conciliation efforts." Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1279 (11th Cir. 2004). Where the EEOC either terminates its investigation or elects not to file suit on behalf of the complaining party, the agency then must send the plaintiff notice of her right to file suit. Once the plaintiff receives this notice, he must file his lawsuit within ninety days. See 42 U.S.C. § 2000e-5(f)(1).

22

right to sue letter, the plaintiff filed a second lawsuit raising the same ADA and Florida Civil Rights Act claims. Id. The district court concluded res judicata barred the plaintiff's claim in light of the previous judgment. Id. at 1148-49.

On appeal, the Eleventh Circuit rejected the plaintiff's argument that res judicata should not bar his discrimination claim because he could not obtain a right to sue letter before filing his first lawsuit. Id. The Circuit Court relied on the reasoning of three other circuit courts to explain that res judicata prohibited claim splitting regardless of the exhaustion issue. Id. (citing Heyliger v. State Unv. & Cmty. Coll. Sys. of Tenn., 126 F.3d 849, 855-56 (6th Cir. 1997); Brzostowski v. Laidlaw Waste Sys., Inc., 49 F.3d 337, 339 (7th Cir. 1995); Woods v. Dunlop Tire Corp., 972 F.2d 36, 41 (2d Cir. 1992)). Where there is an administrative impediment to brining a Title VII claim, a plaintiff may avoid claim preclusion "by filing [his] other claims and seeking a stay to await the Title VII administrative proceedings or by filing the claims and then amending after obtaining the right to sue letter." Id. (citing Woods, 972, F.2d at 41).

In support of its holding, the Jang Court also cited to Rivers v. Barberton Bd. of Edu., 143, F.3d, 1029 (6th Cir. 1998), which the Court finds instructive. In Rivers, the Sixth Circuit found for res judicata purposes that the prior dismissal of a plaintiff's §§ 1981 and 1983 claims constituted a final decision "not only as to those legal theories, but also to any other legal theory under which that claim might have been litigated," including a Title VII claim. Id. at 1032. In the Court's

opinion, the absence of a right to sue letter when filing an action for employment discrimination is inconsequential to the principle that a plaintiff could, and should, litigate Title VII claims in conjunction with all other federal claims based on the same facts. Id. To avoid subsequent preclusion of a Title VII claim, a plaintiff simply needs to file suit outlining his other claims, obtain the right to sue letter, then seek to amend the complaint to include the Title VII claim. Id. at 1033.

Plaintiff attempts to distinguish Jang and the cases upon which Jang relies by pointing out that the parties in each of those cases were identical, but here they are not. Plaintiff misses the point. Defendant cites to Jang to support its contention that the present and prior actions involve the same cause of action, not to address privity. Plaintiff's argument is therefore unpersuasive.

Eleventh Circuit precedent is clear. Plaintiff could, and should, have raised his Title VII claim in the previous lawsuit. Rather than wait for the EEOC to investigate his discrimination claim and to issue a right to sue letter so that he could pursue his Title VII claims and his §§ 1981 and 1983 claim in a cohesive action, Plaintiff instead chose to rush to the courthouse to seek immediate justice for his allegedly unlawful termination. Even without the right to sue letter in hand, Plaintiff could have filed his civil rights action then requested a stay to await the letter and to amend his complaint. He did not, electing instead to split his claims.

There is no dispute that Plaintiff's Title VII claim arose from the same core facts as his §§ 1981 and 1983 claims. Having determined that Plaintiff's

argument that he could not have asserted his Title VII claim in the prior action is squarely foreclosed by Eleventh Circuit present, the Court finds Defendant has satisfied the fourth res judicata element.

The Court concludes that Defendant has adequately met its burden of establishing each of the four res judicata elements. The Court consequently finds Plaintiff's Title VII claim asserted against Defendant is barred by the doctrine of res judicata and that Defendant is entitled to judgment as a matter of law.

### 3.   Attorney's Fees and Punitive Damages

The Court finds Defendant is entitled to summary judgment. Accordingly, there is no basis to award Plaintiff either attorney's fees or punitive damages. Those claims are therefore **DISMISSED**.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Warren Lee, Liz Shumphard, Tyra Howard, Debra Bell, and Kelisa Brown's Motions to Dismiss. (Docs. 7, 8, 11, 12, 13). The Court further **GRANTS** Defendant the City of Valdosta Board of Education or, in the alternative, the Valdosta City School District's Motion for Summary Judgment. (Doc. 31).

**SO ORDERED**, this 31st day of August, 2022.


*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

aks